HIGHT *v.* MARSHALL.

Opinion delivered June 19, 1916.

1. REAL ESTATE BROKERS—ACTION FOR COMMISSIONS—PROOF BY SELLER OF LIST PRICE.—In an action by a real estate broker for his commissions, the defendant will not be permitted to prove by his own testimony and that of others, that he had listed the land with other real estate dealers at a certain price.

2. REAL ESTATE BROKERS—ACTION FOR COMMISSIONS—FIDELITY OF BROKER.—A real estate broker can not be held to have acted with infidelity to his principal, when he told a prospective purchaser that he would try to secure the land for him at something less than the list price, where he then took up with his principal the matter of reducing the price; such action by the broker is only to be considered by the jury in determining whether he acted in good faith.

3. REAL ESTATE BROKERS—COMMISSIONS—DIRECT SALE BY OWNER.—Where a real estate broker procures a sale to be made without notice of revocation of authority, he may recover a commission although the sale was made directly by the owner to a purchaser procured by the broker, and his right to recover commissions does not depend upon knowledge upon the part of the owner that he had brought about the sale.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

*Sam R. Chew,* for appellant.

1. The proof shows the relationship of principal and agent. This relationship established, the law requires the highest degree of candor, honesty, fidelity and absolute good faith. Cooley on Torts (2 ed.), p. 615; 82 S. E. 381; 142 Pac. 1029; 29 Ill. 75; 95 Am. Dec. 568.

Appellee by his conduct violated every principle of law and fidelity. He could not have bought for himself and could not deal except within his powers and instructions for his principal. 90 Ark. 301; 62 *Id.* 598; 103 *Id.* 484.

2. The evidence that the land had been placed in the hands of others for sale at a certain price was relevant and competent. Appellee was not given the exclusive privilege of selling the land, and appellant had the right to sell the land himself free of any liability to the agent for commission. 174 S. W. 531; 91 Ark. 212.

3. The court erred in giving instructions Nos. 1 and 2. 87 Ark. 506; 89 *Id.* 289. There is no proof that appellee ever brought Brett and appellant together. 55 Ark. 574. Appellant's own testimony was sufficient to authorize the giving of No. 4.

*Geo. F. Youmans* and *E. L. Matlock,* for appellee.

1. Where a broker has been employed to sell land and a sale is effected, even though it be through negotiations directly between the owner and purchaser, the broker is entitled to his commission if he has been the producing cause of the sale. 53 Ark. 49; 76 *Id.* 375; 84 *Id.* 462; 87 *Id.* 506; 89 *Id.* 289; *Ib.* 195; 97 *Id.* 23.

2. There is no error in the instructions. There is evidence that appellee procured the purchaser. 89 Ark. 195; 115 S. W. 1134.

3. There is no evidence of bad faith or disloyalty.

McCulloch, C. J. This is an action instituted by appellee against appellant to recover commissions alleged to have been earned in the sale of certain real estate. Appellant resides at Mulberry, Crawford County, Arkansas, and owned a tract of 276 acres of land in Oklahoma, only a short distance from Fort Smith. Appellee is in the real estate business at Fort Smith. The lands were listed with appellee, and, according to the testimony, he made considerable efforts toward procuring a purchaser. He showed the land to numerous prospective buyers and finally showed it to W. L. Brett, who subsequently purchased the land directly from appellant.

Appellee alleged in his complaint that he was authorized by appellant to sell the lands for $13,000, and that he was to receive a commission of 5 per cent. of the purchase price. Appellant in his answer denies those allegations, but alleges on the contrary that he authorized appellee to sell the land for $50 per acre, or $13,800, and agreed to pay him the sum of $500 as commission if he made the sale at that price, but that appellee failed to make the sale and that he (appellant) sold the land himself to Brett. The case was tried before a jury and a verdict was rendered in appellee's favor for the recovery of the sum of $500.

Appellee testified that after appellant listed the land with him for sale at the price of $13,000, he showed the property to numerous parties, and that one day appellant approached him and urged him to make a sale and intimated that he might take less than the price he had already named; that shortly afterward he began negotiations with Brett and early one morning took Brett out to see the place, and that on the return he gave Brett, at the latter's request, the name and address of the owner. It seems that on the afternoon of that same day, Brett, without appellee's knowledge, drove over to Mulberry to see appellant and they verbally closed the trade at the price of $12,000, which was consummated two or three days later. The evidence does not show that appellant knew at the time he made the oral agreement with Brett that appellee had taken Brett out to see the land or had otherwise negotiated with him.

Appellee testified that the next day a man named Steward, who was appellant's tenant on the place, called at the hotel and left word for him not to take any further steps toward selling the land, and that he thereupon called appellant over the telephone and had a conversation with him about the matter. He undertakes to detail that conversation, and it appears that appellant made evasive statements and was endeavoring to conceal the fact that he was about to close the trade with Brett.

Appellee notified him, however, that he had taken Brett out to see the lands and that he would claim a commission. Brett testified that appellee did not give him the name of the owner, but that he ascertained the name of the owner from Steward, the tenant on the place, when he was looking at it. He also testified that on the return trip to Fort Smith, after he and appellee had been out to look at the place, he told appellee that he would not be willing to give $13,000 for the place, and that appellee made the following statement to him: "If you will let me work it for you, I might be able to buy it for a little less."

(1) Appellant offered to prove by his own testimony and that of other witnesses that he had listed the lands for sale with other real estate dealers at the price of $13,800. This testimony was offered in corroboration of appellant's contention that that was the price at which appellee was authorized to offer the land, and that he was not authorized to sell at a lower price. The court was correct in refusing to permit the testimony to be introduced, for it related to transactions between appellant and other parties and was without probative force in establishing the terms of the contract between the two parties to the present controversy.

(2) It is insisted very earnestly by counsel for appellant that appellee was guilty of infidelity to his principal, which ought to prevent him from recovering commission. It is claimed that his statement to Brett was a breach of his duty to appellant, in that it was his duty to secure the highest price he could get for the land, and that he had offered to serve the prospective purchaser in trying to get the price down as low as possible. We do not think, however, that if the testimony of Brett be accepted as true, it necessarily makes out a case of fraudulent conduct on the part of appellee. It must be borne in mind that according to appellee's testimony appellant had intimated to him that if they could not secure the price named ($13,000), he would be willing to consider a

lower price; and if appellee made the remarks to Brett accredited to him, it was perfectly consistent with good faith in taking up the matter again with appellant to ascertain whether or not he would take less than the sum named. The statement does not manifest a willingness on the part of appellee to neglect the interests of his principal and to turn to the service of the prospective purchaser.

The question of fraud on the part of appellee was, however, submitted in two instructions, one of which (No. 6) was given in the form requested by appellant, and the other (No. 2) was given with a modification.

Instruction No. 2, as requested by appellant, reads as follows: "The law requires that plaintiff as the agent or broker of the defendant shall act in absolute good faith toward the defendant, and if you believe from the evidence that plaintiff stated to the purchaser, Mr. Brett, that the lands could be bought for a less price than defendant had agreed with plaintiff to take; that if he, plaintiff, was given time he could procure the lands at a less price from defendant for Mr. Brett, in that event plaintiff's actions were, in law, fraudulent toward defendant, and your verdict must be for the defendant."

The court modified it by striking out the words "were in law fraudulent toward defendant, and your verdict must be for the defendant," and by adding the words "may be considered by you in determining whether he acted in good faith." The modification was correct, because, as we have already said, it was improper to tell the jury that if appellee made the statement to Brett attributed to him it would constitute fraud which would prevent recovery. It was only a circumstance to be considered by the jury in determining whether or not appellee had acted in good faith.

(3) It is contended also that appellee ought not, in any view of the testimony, to be permitted to recover for the reason that appellant sold the land in good faith to Brett without knowledge of appellee's previous negotia-

tions with Brett. The law on this subject is, however, settled by the decision of this court against appellant's contention, in *Stiewel* v. *Lally,* 89 Ark. 195, where we held that if real estate brokers procured a sale to be made without notice of revocation of authority, they were entitled to recover commission even though the sale was made directly by the owner to a purchaser procured by the brokers, and that their "right to recover commission did not depend upon knowledge upon the part of the owner that they had brought about the sale." The instructions of the court conform to the law stated by this court on the subject.

Appellant asked the court to instruct the jury to the effect that unless appellee produced a purchaser "ready, willing and able" to buy the lands on the terms and at the price which appellant had authorized appellee to accept, there could be no recovery; but the court modified the instruction so as to permit a recovery on the price and terms which appellant fixed in his direct trade with Brett. The evidence showed that the reduction of the price was voluntarily made by appellant. In other words, he sold to a purchaser procured by appellee, and at a price which was satisfactory to himself, and therefore he is liable for the commission. Appellee is, under those circumstances, deemed in law to have been the procuring cause and is entitled to the commission. *Stiewel* v. *Lally, supra.*

We are of the opinion that the case went to the jury upon conflicting evidence and upon correct instructions, and that the issues have been settled by the verdict of the jury. We find no prejudicial error in the record, and the judgment is therefore affirmed.